**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | |
|---|---|
| **DONNA L. ISAAC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Civil Action No. 1:07-0722** |
| ) | |
| **CNX GAS COMPANY, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Plaintiff complains of employment discrimination and retaliation. Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 10, 2007. (Document No. 19.) Defendant filed a Memorandum in Support of its Motion on December 11, 2007. (Document No. 20.) Plaintiff filed a Response on December 26, 2007 (Document No. 26.), and Defendant filed a Reply to Plaintiff's Response on January 4, 2008 (Document No. 27.). Plaintiff filed a further Response to Defendant's Motion to Dismiss on February 20, 2008. (Document No. 39.) Having examined the record and considered the law applicable to Plaintiff's claims, the undersigned finds that Plaintiff has not stated, and cannot state, hostile work environment/gender, race or age discrimination claims for which relief may be granted and hereby respectfully recommends that the District Court **GRANT** Defendant's Motion to Dismiss (Document No. 19.) respecting these claims and the undersigned finds that Plaintiff has stated a retaliation claim for which relief may be granted and therefore recommends that District Court **DENY** Defendant's Motion respecting this claim.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2007, Plaintiff, acting *pro se*,[1] filed an Application to Proceed Without Prepayment of Fees and her Complaint. (Document Nos. 1 and 2.)[2] Plaintiff alleges that on June 6, 2005, she was assigned as a "full-time temporary worker" with Personnel Pool of Virginia, also known as Saunders Staffing, to work for CNX Land Resources, Inc., in offices in Virginia shared with CNX Gas Company, LLC, both subsidiaries of Consol Energy. Plaintiff states that the CNX companies moved to offices in Bluefield, West Virginia, in mid-2006, and indicates that they merged into one company, Defendant in this case, hereinafter "CNX". Plaintiff indicates that on June 6, 2005, when she began with CNX, she was paid $7.00 an hour. Two weeks after that, her pay was increased to $9.00 an hour. Her pay was again increased in the last week of September, 2005, to $15.00 and hour.[3] Plaintiff alleges as follows:

> During my employment with CNX, I was harassed by [my] immediate supervisor . . . and [a] coworker . . .. The harassment consisted of not allowing me to know about meetings, group outings, not being permitted to grow professionally with this company and not being permitted the same resources to do my job as the other workers in this company. For the entire 19 months that I worked for this company, I was not allowed to have a computer to do my job. I was required to go to [the coworker] to log me on to a vacant computer somewhere in the company everyday. I was not permitted to have a user ID in order to log onto a vacant computer by myself. If [the coworker] was out of the office, which she was often, I would have to

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] Plaintiff paid the Court's filing fee on November 26, 2007 (Document No. 9.), rendering her Application to Proceed Without Prepayment of Fees moot.

[3] Plaintiff received payment of wages earned in her employment with CNX through Saunders Staffing. *See* copy of Plaintiff's March 26, 2007, letter to the West Virginia Human Rights Commission, p. 4., attached as Exhibit B to CNX's Motion to Dismiss (Document No. 19.).

> go around the office asking people if they could log me on to a computer at someone's desk that was out of the office that day.

Plaintiff further states that "[m]y complaint is one of sexual favoritism in the workplace." Plaintiff alleges that a senior manager was engaged in sexual relationships with a subordinate manager and the coworker. Plaintiff states that when CNX moved to its West Virginia offices, the senior manager and the subordinate manager were promoted. She states that

> [a]fter [The subordinate manager]'s promotion, he took all of my job duties from me the first week of October, 2006. The second week of October, 2006, he moved me out of the office I had been given when we moved to the new location. In a staffing meeting on November 16, 2006, he asked me to stand and introduce myself in a department meeting (I had been with this company 17 months at this time), and he announced that my job duties were to do copying and filing for anyone in this department that needed it.

Plaintiff complains that "[d]uring my 19 months with CNX, there was never a Personnel/Human Resources individual to go to for any problem. * * * During my time with this CNX, there was not a harassment or discrimination policy ever mentioned or made available to me, nor was a complaint procedure ever discussed." She states that she felt that the owner of Personnel Pool of Virginia knew that she was being harassed in her employment with CNX. She states further that "many new hires took place after our move to the new location. I was not allowed to know about or apply for any of these positions." Plaintiff states that men in the office "were given offices and all the resources of the company to do their jobs . . ., but women in this company were being forced out of offices, having all job duties taken and not allowed computers, printers, etc., to do their jobs." Plaintiff states that she made a verbal complaint of sexual harassment to the West Virginia Human Rights Commission on November, 16, 2006, and filed a written complaint with the West Virginia Human

Rights Commission on December 1, 2006.[4] She states that she reported her complaint of sexual harassment to the Consol Energy's Chief Legal Officer of Consol Energy, CNX's parent company, on December 11, 2006. On December 12, 2006, CNX's Human Resource Manager called her and spoke with her about her complaints. He called her again on December 19, 2006, and informed her, as she claims, that "he had discussed my matter with his counsel and they did not feel that I had been harassed, that what I had experienced was just poor company management and I was not qualified for any of the permanent positions that had been filled since the move to the new location. I told him we disagreed and that I felt I was being harassed." Plaintiff states that a CNX coworker told her to call a person at Personnel Pool of Virginia on December 27, 2006, and on doing so, she was informed that her last day working for CNX was December 29, 2006. Alleging ties between CNX's law firm and the Equal Employment Opportunity Commission and Personnel Pool of Virginia and the State of West Virginia, Plaintiff states that her Complaint with the West Virginia Human Rights Commission was dismissed and the Equal Employment Opportunity Commission adopted the West Virginia Human Rights Commission's decision insinuating that the decisions were the result of improper influence.[5]

---

[4] A copy of Plaintiff's Complaint as filed with the West Virginia Human Rights Commission is attached as Exhibit B to CNX's Motion to Seal Complaint and Memorandum in Support (Document No. 4.) Plaintiff's Complaint was dated February 7, 2007, and other documents, copies of which are exhibits to CNX's Motion to Seal indicate that Plaintiff's complaint was docketed with the West Virginia Human Rights Commission on that date. The undersigned will nevertheless assume in view of the applicable standard in consideration of CNX's Motion to Dismiss as summarized *infra* that Plaintiff filed her Complaint with the West Virginia Human Rights Commission prior to CNX's termination of her employment as she alleges.

[5] It appears that Plaintiff did not file a Complaint with the EEOC while in CNX's employment. She filed two Complaints with the EEOC in 2007: (1) a Complaint dated July 23, 2007, complaining of age discrimination and retaliation; and (2) a Complaint dated September 25, 2007, complaining of age and race discrimination. (Document No. 19, Exhibits C and E.)

On November 20, 2007, Plaintiff filed an Addendum to her Complaint. (Document No. 7.) Plaintiff explains in more detail the basis for her claims. It also appears from her Addendum that Plaintiff is asserting that CNX discriminated against her by treating her differently than two black female temporary workers who started in CNX's employment in August, 2006, about fourteen months after Plaintiff started her employment with CNX. She states that "I trained them and another temporary worker . . . to copy files for the Oakwood Office. [They] were both given computers to do their jobs. They had been with CNX for 3 months at that time." Plaintiff further contends that "[m]y employment with CNX was terminated because of my complaint of harassment." She alleges that CNX and Personnel Pool of Virginia "are both guilty of harassment and retaliation against me." Plaintiff attached a copy of documents indicating employees and the office location of CNX; her telephone calls to the West Virginia Human Rights Commission in November, 2006; EEOC policies and enforcement guidelines for temporary employees and staffing firms respecting hostile work environments and retaliation; information in the office of the West Virginia Secretary of State pertaining to CNX's place of doing business and directors and officers; and her application for unemployment compensation.

On December 10, 2007, CNX filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that Plaintiff had failed to state a claim for which relief could be granted, (Document No. 19.), and on December 11, 2007, CNX filed a Memorandum in Support of its Motion (Document No. 20.). CNX attached a copy of the following documents as exhibits to its Motion to Dismiss (Document No. 19.):

Exhibit A     Plaintiff's Complaint in this matter.
Exhibit B     Plaintiff's March 26, 2007, letter to Ms. Sally Brown of the West
              Virginia Human Rights Commission in response to the position

|           |                                                                                                      |
|-----------|------------------------------------------------------------------------------------------------------|
| | which CNX was taking respecting her claims there.[6] |
| Exhibit C | Plaintiff's EEOC Charge of Discrimination dated July 23, 2007, indicating her claims of age discrimination and retaliation. |
| Exhibit D | The EEOC's Notice of Charge of Discrimination to CNX dated July 26, 2007, indicating Plaintiff's claims that CNX violated Title VII and the Age Discrimination and Employment Act and Dismissal and Notice of Rights dated August 13, 2007, indicating that the EEOC adopted the West Virginia Human Rights Commission. |
| Exhibit E | The EEOC's Notice of Charge of Discrimination to CNX dated October 1, 2007, including Plaintiff's EEOC Charge of Discrimination dated September 25, 2007, indicating her claims of race and age discrimination. |

---

[6] Plaintiff stated in this letter that her male office manager was involved in "multiple consensual sexual relationships" with a male subordinate manager, her immediate supervisor, and a female coworker. She states that "I was able to perceive over a short period of time by working with these two individuals that both of them were extremely jealous over [the manager]." She alleges further as follows:

> Sexual favoritism extended by [the manager] to these two individuals, who controlled and overseen [sic] my assignments proved to have increasingly negative affects to my work environment. My sex was the motivating factor for [the subordinate manager's] harassing conduct towards me. I was denied employment opportunities and benefits due to territoriality in this department by these two people. I was surprised at the number of staff members that were intimidated by them. All [the subordinate manager and the coworker] had to do was look at someone with dislike and other staff members would quickly disassociate themselves from that person. I experienced this type of harassment on a routine basis beginning about five months into my assignment. * * *
>
> At the discretion of [the subordinate manager and the coworker], I was denied access to resources (computer) to enable me to perform my job duties and opportunities to develop professionally with this company during the nineteen months I was employed there, and ultimately, all my job duties that I had done consistently . . . over [the] fourteen month period were taken from me. This was part of a series of acts against me to try to humiliate me into quitting my job.

Plaintiff names other women "adversely affected by [the subordinate manager]'s position of authority over them or his sphere of influence with other managers in this company." Finally, Plaintiff states that "[t]he mere proximity between my reporting the complaint and my termination is circumstantial evidence of retaliation."

Defendant asserts as follows in its Memorandum (Document No. 20.):

    A.    Plaintiff cannot assert a Title VII claim premised on sexual favoritism;
    B.    Plaintiff's complaint fails to state a claim for gender discrimination;
        1.    Plaintiff may not assert claims on behalf of other females;
        2.    Plaintiff fails to allege that sex was the motivating factor for her alleged disparate treatment;
        3.    Plaintiff's allegations that women were victims of gender discrimination is contradicted by the representations in her March 26, 2007, letter;
        4.    Plaintiff has not alleged that her position was ultimately filled by someone not a member of the protected class;
    C.    Plaintiff cannot state a Title VII claim premised on sexual orientation discrimination;
    D.    Plaintiff's Complaint does not state a claim for sexual harassment;
        1.    Plaintiff's Complaint does not state a claim for quid pro quo sexual harassment;
        2.    Plaintiff's Complaint does not state a hostile work environment sexual harassment claim;
    E.    Plaintiff's Complaint fails to state a claim of retaliation.

On December 26, 2007, Plaintiff filed a Response in Opposition to CNX's Motion to Dismiss. (Document No. 26.) Plaintiff states as follows:

> I would like to bring to the court's attention that the complaint in this matter has not been served on defendant. My complaint was filed with the court on November 9, 2007, but plaintiff has 120 days after filing her complaint with the court to serve that complaint on defendant at which time counsel for defendant can file an answer. However, to date the complaint has not been served on the defendant . . .. At this time counsel has erred in submitting his motion to dismiss.

On January 4, 2008, CNX filed a Reply to Plaintiff Response. (Document No. 27.) CNX indicates that it submitted its Motion to Dismiss though it was not served with the Complaint thereby intentionally waiving the requirement that Plaintiff serve her Complaint upon CNX pursuant to Federal Rule of Civil Procedure 4. CNX points out that in her Second Motion to Correct Sealed Memorandum Opinion and Order of the Court (Document No. 25.) Plaintiff indicates that she is stating two claims in this action: (1) a claim of hostile work environment through sexual favoritism;

and (2) a retaliatory discharge claim. CNX asserts that the Court need only consider Plaintiff's allegations in the context of these two claims. CNX further points out that Plaintiff has indicated in the same document (Document No. 25.) that CNX's subordinate manager's harassment of her was nonsexual. Citing Judge Haden's decision in Turley v. Union Carbide Corp., 618 F.Supp. 1438 (S.D.W.Va. 1986), and decisions of Courts in other jurisdictions, CNX argues essentially that allegations indicating that harassment of a sexual nature occurred are necessary to state a sexually hostile work environment claim. Finally, CNX addresses whether notice is required in this matter pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Citing the Fourth Circuit Court of Appeals' observation in AMZURA Enterprises, Inc., v. Ratcher, 18 Fed.Appx. 95, 105 fn.11(4th Cir. 2001), that "we are unaware of any published decisions in our Circuit applying Roseboro outside of the prisoner context.", CNX contends that Roseboro notice is not necessary in this case because Plaintiff is not a prisoner.[7] CNX further argues that the District Court effectively gave Plaintiff Roseboro notice in its Order filed on December 13, 2007 (Document No. 23.), advising Plaintiff in view of CNX's filing of its Motion to Dismiss and Plaintiff's *pro se* status of her right to file a response to CNX's Motion to Dismiss and she did so. CNX urges that under these circumstances the District Court may appropriately consider Its Motion to Dismiss.[8]

---

[7] The undersigned agrees with CNX's position respecting *Roseboro* notice.

[8] The undersigned notes that Plaintiff, acting *pro se*, has filed two further Complaints and Applications to Proceed Without Prepayment of Fees thereby initiated two other civil matters in the District Court based upon the same facts and circumstances alleged in this matter: *Isaac v. Saunders Staffing, Inc.*, Civil Action No. 1:08-0140 on February 29, 2008; and *Isaac v. CNX Gas Company, LLC*, Civil Action No. 1:08-0143, on March 3, 2008. In both actions, Plaintiff states that she "is seeking damages for age discrimination, race discrimination, hostile work environment, reprisal, and retaliatory discharge." In her Complaint in *Isaac v. Saunders Staffing, Inc.* (Document No. 1.), Plaintiff claims that Saunders Staffing (1) aided and abetted CNX in discriminating against her and discharging her in retaliation for reporting the harassment which she experienced to the West Virginia Human Rights Commission and CNX's parent company, Consol Energy; (2) committed

On February 20, 2008, Plaintiff filed an Amended Complaint (Document No. 37.) alleging that "Defendant by and through its agent and employee . . . created a hostile work environment by subjecting Plaintiff to a pattern of negative employment actions in the workplace." Plaintiff complains that "[t]hese actions were accompanied by blocking every opportunity Plaintiff made to advance professionally within this company." She states that she "was denied a computer to complete her job duties . . . .." She states that her immediate supervisor and a co-employee "intimidated other workers from associating or working with" her and her immediate supervisor humiliated her by taking work and work space away from her and assigning them to another employee who was younger than she and by announcing at an employee meeting that her job duties included "copying and filing for anyone that needed it in the department" and assigning two black female temporary employees who had worked for CNX for less time than she had to assist

---

age discrimination in failing to refer her for full time employment as a paralegal to the West Virginia Department of Health and Human Services in September, 2005; (3) aided and abetted CNX in discriminating against her based upon race in retaining a black female temporary worker "with inferior job qualifications" and terminating Plaintiff's employment; and (4) intentionally misrepresented to the West Virginia Unemployment Commission that Plaintiff was a temporary employee, did not seek another job assign and therefore quit. Plaintiff has filed Amendments to her Complaint containing essentially the same allegations. (*Id.*, Document Nos. 4 and 5.) In her Complaint in *Isaac v. CNX Gas Company, LLC*, Civil Action No. 1:08-0143 (Document No. 2.), Plaintiff alleges that CNX was a "joint employer" with Saunders Staffing and further claims that CNX (1) committed age discrimination by assigning a woman half her age to perform her job duties after she had worked for CNX for fifteen months; (2) committed race discrimination by giving a black female temporary worker a computer to perform her job duties and refusing to give Plaintiff a computer; and (3) created a discriminatory environment by not posting job vacancies and filling them with persons from outside the company. The undersigned finds that *Isaac v. Saunders Staffing, Inc.*, Civil Action No. 1:08-0140, and *Isaac v. CNX Gas Company, LLC*, Civil Action No. 1:08-0143, are based essentially upon the same factual circumstances and therefore present the same issues of law as are before the District Court in this matter and will consolidate them with this case by separate Order.

supervisors. Plaintiff further states that CNX had no anti-harassment/discrimination policy, complaint procedure or human resources person available.

On February 20, 2008, Plaintiff filed a Memorandum in Response to Defendant's Motion to Dismiss. (Document No. 39.) Plaintiff discusses her employment with CNX and matters pertaining to her administrative Complaints. Plaintiff states that "Plaintiff's claim in this instant case is one of sexual favoritism in the workplace, causing a hostile work environment and retaliation for reporting harassment."

## **THE STANDARD**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of her 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) While the plaintiff in an employment discrimination suit need not allege specific facts establishing a *prima facie* case of discrimination, she must allege facts supporting each of the elements of her discrimination claims. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 - 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002).[9]

---

[9] If a Rule 12(b)(6) motion to dismiss is filed in a hostile work environment/discrimination case and the Court determines that the factual allegations as stated in the plaintiff's Complaint meet the elements of her claims such that she has stated substantial hostile work environment/discrimination claims, i.e., claims for which relief can be granted, the Court applies a three-step sequential test for considering the claims under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L. Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*,

Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that the plaintiff's factual allegations do not support one or more of the elements of her discrimination claims and no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. *See* Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

---

509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, Plaintiff must establish a *prima facie* case of discrimination. If Plaintiff does so, the burden shifts to CNX to articulate a legitimate, non-discriminatory reason for terminating Plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Dept. of Communty Affairs v. Burdine*, 450 U.S. at 252 - 253, 101 S.Ct. at 1093; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 - 507, 113 S.Ct. 2742, 2746 - 2747. If CNX does so, the burden returns to Plaintiff to demonstrate that CNX's reason is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804, 93 S.Ct. at 1825; *Texas Dept. of Communty Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *St. Mary's Honor Center v. Hicks*, 509 U.S. at 510, 113 S.Ct. at 2748. The West Virginia Supreme Court has adopted this test in consideration of claims filed under the West Virginia Human Rights Act. *Hanlon v. Chambers*, 195 W.Va. 99, 105 - 106, 464 S.E.2d 741, 747 - 748 (1995); *See also Burgess v. Gateway Communications, Inc.*, 26 F.Supp.2d 888, 892 (S.D.W.Va. 1998).

## DISCUSSION

Plaintiff's claims may be considered under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*,[10] the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623,[11] and the West Virginia Human Rights Act, W.Va. Code §§ 55-11-1, *et seq.* The Courts have established the elements of discrimination claims on the basis of these enactments.

### A.  Plaintiff's Hostile Work Environment/Gender, Race and Age Discrimination Claims.

---

[10] 42 U.S.C. § 2000e-2(a)(1) provides that it is "an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . .." This statute is intended to protect employees against improper discrimination in the workplace. It is not intended to protect them against employers' personnel policies and decisions. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005), *cert. denied*, 546 U.S. 1214, 126 S.Ct. 1431, 164 L.Ed.2d 133(2006).

[11] 29 U.S.C. § 623(a) provides that it is

unlawful for an employer –

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of his employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's age; or

(3) to reduce the wage rate of any employee to comply with this chapter.

29 U.S.C. § 623(b) provides that it is "unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age." The elements of an age discrimination claim are essentially the same with respect to age discrimination claims under the ADEA as they are for sex and race discrimination claims under Title VII. *See Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir. 1982), adopting the *McDonnell-Douglas* analysis in ADEA cases.

Generally, the elements of a hostile work environment claim are as follows: (1) unwelcome harassment; (2) based upon gender, race or age; (3) which is sufficiently severe or pervasive to alter the conditions of employment and creates an abusive atmosphere; and (4) some basis for imposing liability on the employer. Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003); Bass v. E.I. Dupont de Nemours & Company, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940, 124 S.Ct. 301, 157 L.Ed.2d 253 (2003).[12] Respecting the first and second elements, it is clear that the allegations which will support a sex-based hostile work environment/discrimination claim go well beyond assertions indicating sexual advances or propositions and include claims of sexually explicit and derogatory comments. Ocheltree, 335 F.3d at 331 - 332. Respecting the third element, "[t]he 'severe or pervasive' element has both subjective and objective components." Ocheltree, 335 F.3d at 333, *citing* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 - 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Allegations of a sexually hostile work environment must therefore indicate circumstances which were subjectively offensive to the plaintiff and also would be objectively offensive to a reasonable person in the plaintiff's position. Ocheltree, 335 F.3d at 333.[13] Quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), as the United States Supreme Court quoted from an employment law treatise, the Fourth

---

[12] Title VII protects members of both majority and minority groups from race-based discrimination. *McDonald v. Sante Fe Trail Transp. Co.*, 427 U.S. 273, 278 - 279, 96 S.Ct. 2574, 2577 - 2578, 49 L.Ed.2d 493 (1976).

[13] The Court stated in *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 342 (4th Cir. 2006), that "[o]bjectively reasonable employees can and do recognize that not every offensive comment will by itself transform a workplace into an abusive one. Therefore it sometimes will not be reasonable for an employee to believe that the isolated harassment event he has witnessed is a component of a hostile workplace that is permeated with discriminatory intimidation, ridicule, and insult."

Circuit stated in Ocheltree, *Id.*, that "[t]his standard is designed to 'filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."'"[14] Respecting the fourth element, "[e]mployers are not automatically liable for acts of harassment levied by supervisors against subordinates. Rather, there must be some basis in law for imputing the acts of the supervisor to the employer." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001). It must be evident therefore in Plaintiff's allegations that she suffered an actionably hostile work environment at the hands of her immediate supervisor. Faragher v. City of Boca Raton, 524 U.S. 775, 789, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In view of Defendant's Rule 12(b)(6) Motion to Dismiss, the Court must determine whether Plaintiff's Complaint contains allegations indicating essentially that she experienced unwelcome circumstances in her employment with CNX which subjectively and objectively constituted sufficiently abusive harassment on the basis of sex, race and/or age that a "term,

---

[14] The EEOC recognizes that a hostile work environment can result from sexual favoritism. The EEOC defines sexual favoritism as follows:

> Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sexual discrimination against other persons who were qualified for but denied that employment opportunity or benefit.

29 C.F.R. 1604.11(g). The EEOC has also promulgated a Policy Guidance on Employer Liability under Title VII for Sexual Favoritism recognizing three kinds of sexual favoritism: (1) isolated instances of favoritism towards a "paramour"; (2) favoritism based upon coerced sexual conduct; and (3) widespread sexual favoritism. No. 915.048 (approved Jan. 12, 1990). Under the Guidance, the first kind of sexual favoritism is considered "not prohibited", and the second and third kind of sexual favoritism are regarded "'harassment."

condition, or privilege" of her employment was affected within the meaning of Title VII. *See* Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 - 2406, 91 L.Ed.2d 49 (1986).

The undersigned finds that Plaintiff's allegations, taken broadly from all of the documents which she has filed as true, do not indicate actually or by implication that she was subject to unwelcome harassment based upon gender, race or age which was sufficiently severe and pervasive to alter the conditions of her work environment and create an abusive work environment at CNX. Plaintiff does not indicate that she was subject to sexual advances or propositions or sexually explicit or derogatory comments. Plaintiff alleges that two of her supervisors and a coworker were involved in sexual relationships but does not indicate that they engaged in overt inappropriate sexual behavior or open discussion of their relationships in Plaintiff's presence. Rather, Plaintiff alleges that these relationships affected her work environment much more subtly as tension/jealousy existed among the three which caused them to act abusively toward Plaintiff and other employees. Essentially, Plaintiff complains about actions of her supervisors which impacted the scope of her work and her ability to do it and the location of her work station. While it clearly appears that Plaintiff found that the actions of her supervisors at CNX restricted her in her ability to do her work and were offensive to the extent that she believed that tension/jealousy was manifest in them, she nevertheless received significant pay increases and remained in her employment with CNX for 19 months until December, 2006, when it ended. The circumstances as Plaintiff alleges them do not indicate or suggest that she experienced any adversity in her employment with CNX as a consequence of sexual favoritism[15] among the three, i.e., by their preferring each other over her, or

---

[15] CNX cites *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996), and this Court's decision in *Burgess v. Gateway Communications, Inc.*, 26 F.Supp.2d 888, 893 (S.D.W.Va. 1998)("Promotion of a co-worker based upon sexual favors does not amount to sexual discrimination under Title VII"),

gender, race or age discrimination. Based upon the foregoing, the undersigned concludes that Plaintiff has not stated, and cannot state, allegations sufficient to support the first three elements of a cognizable hostile work environment/gender, race or age discrimination claim.

### B. Plaintiff's Retaliatory Discharge Claim.

42 U.S.C. § 2000e-3(a) provides as follows:

> It shall be an unlawful employment practice for any employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To state a claim of retaliation for which relief may be granted, Plaintiff must allege that (1) she engaged in protected conduct; (2) CNX took adverse action against her; and (3) CNX took adverse action because of her protected conduct. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994); Williams v. Cerberonics, 871 F.2d 452, 457 (4th Cir. 1989). Filing a complaint with the EEOC or the West Virginia Human Rights Commission is protected conduct. Price v. Thompson, 380 F.3d at 212; Carter v. Ball, 33 F.3d at 460; Hanlon v. Chambers, 195 W.Va. 99, 112, 464 S.E.2d 741, 754 (1995), citing W.Va. Code 5-11-9(7)(C). The West Virginia Supreme Court has adopted the federal standard. Akers v. Cabell Huntington Hospital, Inc., 215 W.Va. 346, 599 S.E.2d 769 (2004). Under West Virginia law, "[r]eprisal claims . . . exist independently of claims of sexual harassment." Buechler v. Old Dominion Freight Lines, Inc., 2008 WL 169102 (S.D.W.Va.)(District Judge Faber), citing Akers, supra. "[A] causal

---

asserting that "a Title VII claim premised on 'sexual favoritism' is not recognized in this circuit." (Document No. 20, p. 9.) The Courts in *Becerra* and *Burgess* considered circumstances indicating sexual favoritism toward a lover or a paramour, and their statements appear to be fully consistent with the EEOC regulation and Policy Guidance noted above.

connection . . . exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price v. Thompson, 380 F.3d at 213.

Citing Jordan v. Alternative Resources Corp., 458 F.3d 332 (4th Cir. 2006), CNX essentially asserts that Plaintiff fails to state a cognizable claim of retaliatory discharge because Plaintiff could not have reasonably believed in complaining about her circumstances that she was opposing an unlawful employment practice and therefore she did not engage in protected conduct. Thus, her termination could not have been retaliatory as she claims. CNX does not address Plaintiff's claim that her termination was retaliatory because it occurred soon after she filed her Complaint with the West Virginia Human Rights Commission. It may well be that CNX does not address this issue because it had no knowledge that Plaintiff had complained to the West Virginia Human Rights Commission about her work environment before the termination of her employment there and perceived that she is claiming retaliation against her for complaining by changing her job assignments and withholding equipment and opportunities for advancement. As noted above, it appears from the record that while Plaintiff alleges that she filed her written Complaint with the West Virginia Human Rights Commission on December 1, 2006, the agency nevertheless did not docketed her Complaint until February 7, 2008. These factual circumstances, however, may not be gathered from the allegations contained in Plaintiff's Complaint and the other documents which she has filed and are not sworn to or attested such that the District Court could consider CNX's Motion under Rule 56, and therefore, the undersigned disregards them at this point under the standard applicable for considering Rule 12(b)(6) motions. Plaintiff claims that she complained to CNX and the West Virginia Human Rights Commission prior to CNX's termination of her employment. She therefore alleges that she engaged in protected conduct and CNX took adverse action against her.

This is sufficient to state a claim of retaliation for which relief may be granted. The undersigned therefore recommends that the District Court deny CNX's Motion to Dismiss only with respect to Plaintiff's claim of retaliation based upon her filing of a Complaint with the West Virginia Human Rights Commission and direct further proceedings on that claim pursuant to the standard discussed above at footnote 9.

## PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** Defendant's Motion to Dismiss (Document No. 19.) with respect to Plaintiff's claims of hostile work environment/ gender, race and age discrimination and **DENY** Defendant's Motion respecting Plaintiff's retaliation claim.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352

(1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and to counsel of record.

ENTER: July 9, 2008.

R. Clarke VanDervort
United States Magistrate Judge